UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-62215-CIV-COHN/SELTZER

MICHAEL J. MYCKO, et al.,

    Plaintiffs,

vs.

M/Y AMARULA SUN, etc.,

    Defendant.

_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Summary Judgment [DE 22] ("Motion"). The Court has considered the Motion, Defendant's Response [DE 25] and supporting filings [DE 23, 24, 26], and Plaintiffs' Reply [DE 28]. The Court has reviewed the Record in this case and is otherwise advised in the premesis.

This case concerns Plaintiffs' claims to unpaid seaman's wages and related penalties. Plaintiffs allege that the master of the Defendant Vessel, M/Y Amarula Sun, wrongfully terminated them without providing the notice that their employment agreements required. Plaintiffs claim unpaid wages for the notice period. Further, Plaintiff Michael Johnson sues for penalty wages under 46 U.S.C. § 10313(g)(1) for the master's failure to timely remit his last paycheck.

The Court will enter summary judgment on neither of these claims. Plaintiffs are not entitled to notice if, as Defendant contends, they were terminated for cause. Finally, with respect to Johnson's Section 10313(g) claims, Defendant has produced evidence

tending to show that the Amarula Sun is a yacht, and thus exempt from that statute's requirements. Accordingly, Plaintiffs' Motion will be **DENIED**.

I.   Standard

The Court will grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56, the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party may not rely merely on allegations or denials in its own pleading, but instead must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56; Matsushita, 475 U.S. at 587.

As long as the non-moving party has had ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party is

merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249–50.

## II.     Background

Plaintiffs sue the M/Y Amarula Sun to recover unpaid wages and penalties to which they believe they are entitled following the termination of their employment in March 2014.  The parties agree on the circumstances surrounding the beginning of Plaintiffs' employment, and Plaintiffs do not contest—at least at this stage—how their employment ended.  Plaintiffs' Motion instead turns upon an issue of contract interpretation.

Plaintiff Michael Mycko joined the Amarula Sun's crew in February of 2014, as an engineer.  [DE 22 at 2.]  Plaintiff Michael Johnson was hired as first mate much earlier, on November 19, 2012.  [Id. at 3.]  Both Plaintiffs signed nearly identical employment agreements, which they attach as exhibits to their Motion [DE 22-5 & 22-6].  Defendant does not dispute the authenticity or accuracy of these exhibits.

The employment agreements contain two Paragraphs that are especially relevant to Plaintiffs' Motion.  Paragraph 3 of Mycko's agreement states as follows:

> **3.     Notice of Termination of Employment**
>
> **Indefinite Agreement**
>
> The length of notice which you are obliged to give to terminate your employment is 30 days.
>
> The length of notice which you are entitled to receive from the shipowner to terminate your employment is 30 days.

[DE 22-5 at 3.]  Johnson's employment contract is the same, except it specifies only 15 days' notice.  [DE 22-6 at 3.]

Paragraph 8 of each agreement is identical.  It reads as follows:

> **8.     Termination of Employment**
>
> Your employment under this agreement may be terminated in the following circumstances:—
>
> (a)     by mutual consent;
>
> (b)     Your misconduct as prescribed in the Code of Conduct of the Merchant Navy or the shipowner's Code of Conduct;
>
> (c)     Your need to terminate the agreement for compassionate or other urgent reasons, this shall be without penalty to you;
>
> (d)     If in the opinion of the Master your continued employment would be likely to endanger the vessel or any person onboard;
>
> (e)     By appropriate notice in accordance with paragraph 3 above.
>
> Should the vessel be lost, sold or otherwise cease to be a Cayman Islands ship and your employment is terminated before the date indicated in section 3 of this agreement you will be paid the greater of either two month's salary or your notice period.

[DE 22-5 at 5; DE 22-6 at 5.]

The Amarula Sun is a 40 meter yacht registered in the Cayman Islands. [DE 22-2 at 2.] Defendant Vessel submits an affidavit from its beneficial owner, Raymond Mershon Craig, III, describing the use to which he put the vessel. Craig affirms that "[a]t one point in time the vessel was operated as a commercial vessel but its character was changed to a pleasure yacht with the Cayman Islands Shipping Registry on September 25, 2013." [DE 24 at 3.] According to Craig, "[t]he yacht remained as a 'pleasure yacht' from that date forward." [Id.] Plaintiffs contest that the Amarula Sun was ever used for purely recreational purposes, but offer no countervailing evidence.

On March 21, 2014, the Amarula Sun's master terminated Plaintiffs without notice. [DE 22 at 3–4.] According to Craig's affidavit, Plaintiffs permitted an unauthorized person to live on the vessel for a week and failed to adequately maintain the vessel. [DE 24 at 4.] Thus, Plaintiffs were terminated for cause under Subparagraphs 8(b) and 8(d) of their employment agreements. [Id. at 5.] Although Plaintiff Mycko was timely paid, Plaintiffs allege that Johnson did not receive his earnings for the period from March 1, 2014, though March 14, 2014, until April 21. [DE 16 at 9.]

Plaintiffs Amended Complaint is organized into two Counts, one for each Plaintiff. But their summary judgment motion really involves three distinct claims. For their first two claims, both Plaintiffs sue the vessel for recovery of wages that they would have earned during the notice period, had they received such notice. [DE 22 at 7–9.] As their third claim, Plaintiff Johnson argues that he is entitled to penalty wages under 46 U.S.C. § 10313, which permits recovery of a double-wage penalty from a vessel's master for wages not paid "within 4 days after the seaman is discharged." [Id. at 9–11.]

### III.    Discussion

Plaintiffs' Motion will be denied. The notice provision contained in Paragraph 3 of Plaintiffs' respective employment agreement does not apply to termination for cause under Paragraph 8. As to Johnson's Section 10313(g) claim, Defendant has produced sufficient evidence to survive summary judgment on the question of whether the Amarula Sun is a "yacht" to which 46 U.S.C. § 10313 does not apply.

#### A.    Plaintiffs' Claims Based Upon Termination Without Notice

Plaintiffs argue that even if they were terminated for cause, they should have received wages during the notice period. According to their motion papers, Plaintiffs are

5

"entitled to their respective notice periods—as provided in Clause 3 of their respective Agreements—irrespective of why their employment was terminated." [DE 28 at 5.] The Court does not agree with this reading of Plaintiffs' employment agreements. Plaintiffs' Motion will therefore be denied on this score.

The Court looks to federal common law principles when interpreting the employment agreements. "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 22–23 (2004); but see Rose v. M/V "Gulf Stream Falcon", 186 F.3d 1345, 1350 (11th Cir. 1999) ("When interpreting a maritime contract, we apply Florida law pursuant to the conflicts of law principle of *lex loci contractus*—the law of the place where the contract is made."). "[T]he general federal maritime law has adopted the general rules of contract interpretation and construction." F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342, 1356 (S.D. Fla. 2007).

Under federal common law, where a contract "is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and the Court will construe the contract as a matter of law." Foreman v. Exxon, Corp., 770 F.2d 490, 496 (5th Cir. 1985). "Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties." Breaux v. Halliburton Energy Servs., 562 F. 3d 358, 364 (5th Cir. 2009). If a contract appears ambiguous in some respect, the Court applies the rules of contract construction to resolve the ambiguity. United States ex rel. Whitten v. Triad Hosp., Inc., 210 F. App'x 878, 880–81 (11th Cir. 2006) (discussing Georgia law, but observing that "the contract interpretation principles applied under Georgia law and federal law are

6

virtually the same"). Only if the ambiguity remains after applying the rules of construction should the matter go to the factfinder for decision after the taking of evidence extrinsic to the agreement. Id. "Stated differently, a contract or term thereof is ambiguous if, after applying established rules of interpretation, the written document 'remains reasonably susceptible to at least two reasonable but conflicting meanings.'" F.W.F., Inc., 494 F. Supp. 2d at 1357–58 (quoting 11 Williston on Contracts §30:7 (4th ed. 2006)).

The following canons of contract interpretation guide the Court's decision. First, the Court does not consider a contract's terms in isolation. Rather, "[e]ach provision of a contract must be read in light of others so as to give the meaning reflected by the contract as a whole." Id. at 1385. Second, "[t]o the extent possible, every word, term or phrase of a maritime contract must be given effect and should be interpreted without rendering any of them meaningless or superfluous." Id. Third, where two provisions appear to conflict, "the provision directed to a particular matter controls over the provision which is general in its terms." L.W. Matterson, Inc. v. United States, 61 Fed. Cl. 296, 307 (2004). Fourth, an interpretation that leads to a reasonable outcome is preferred to an interpretation that leads to an unreasonable outcome. 11 Williston on Contracts § 32:11 (4th ed. 2007).

Application of these canons brings clarity to Plaintiffs' employment agreements. Paragraph 3 of each agreement states that Plaintiffs are "entitled" to certain notice before their employment may end. Paragraph 3 similarly states that Plaintiffs are "obliged" to provide their employer with that same notice before they leave on their own accord. But paragraph 8 describes when these notice provisions apply—and,

7

importantly, when they do not. Paragraph 8 addresses specific circumstances. It therefore controls in those circumstances in the face of Paragraph 3's more general terms.

Further, if the Court were to adopt Plaintiffs' view that Paragraph 3 entitled Plaintiffs to notice no matter how their employment came to an end, much of Paragraph 8 would be superfluous. The employment agreement would not need to separately permit Plaintiffs' discharge for "misconduct as prescribed in the Code of Conduct of the Merchant Navy," or for "compassionate" reasons. If notice was required in any circumstance, Paragraph 8(e)—which allows termination on notice for any or no reason—would do.

Finally, requiring notice under paragraph 3 in every circumstance described in paragraph 8 produces absurd results. It would make little sense to permit a sailor to terminate his employment "for compassionate or other urgent reasons" and then require him to remain aboard the vessel for an additional 30 days. Similarly, it would not be reasonable to construe a contract to require another month's work out of a sailor whose "continued employment would be likely to endanger the vessel or any person onboard."

Accordingly, the Court agrees with Defendant that if Plaintiffs were terminated for misconduct then they were entitled neither to notice nor lost wages. Defendants have provided the Court with affidavits tending to show that Plaintiffs were in fact fired for their misconduct. Accordingly, a genuine issue of material fact exists as to Plaintiffs' entitlement to these damages and the Court will deny summary judgment on these claims.

### B.     Penalty Wages Under 46 U.S.C. § 10313

Summary judgment will also be denied as to Plaintiff Johnson's claims for penalty wages under 46 U.S.C. § 10313.  Subsections (f), (g) and (h) of Section 10313 control the matter.  They read as follows:

> (f)     At the end of a voyage, the master [of a vessel] shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier.  When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.
>
> (g)(1) . . . when payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.
>
> (h)     Subsections (f) and (g) of this section do not apply to a fishing or whaling vessel or a yacht.

Defendant does not dispute that it paid Johnson after the window that Subsection (f) allows.  Rather, Defendant contends that Subsection (h) bars Johnson's claims because the Amarula Sun is a yacht.  [DE 25 at 10–14.]

Surprisingly, established law provides little guidance to as to the definition of "yacht" within Subsection (h).  Neither Plaintiffs nor Defendant point the Court towards any statute or published case defining the term "yacht" for the purposes of Subsection (h).  The Court's own research reveals none.  In such circumstances, the Court looks "to the common usage of words for their meaning."  United States v. Fretze, 244 F.3d 1323, 1327 (11th Cir. 2001).  "[T]o determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance."  Anderson v. UNUM Provident Corp., 369 F.3d 1257, 1264 (11th Cir. 2004).

Plaintiffs urge the Court to adopt the approach of an unpublished 2004 order in the case of <u>Reibelt v. New Land Ventures, Ltd.</u>, Case No. 02-81119-CIV-HURLEY/LYNCH (S.D. Fla. Dec. 10, 2002). [DE 28 at 7.] In that case, the court conducted the above-referenced dictionary-based analysis. The <u>Reibelt</u> court observed that that a yacht's touchstone feature—common to numerous dictionary definitions—is its use for pleasure as opposed to a commercial purpose. In keeping with this observation, the <u>Reibelt</u> court held that a vessel loses its status as a yacht when it is "used for corporate and commercial charters."

This Court has some misgivings about the <u>Reibelt</u> Court's ultimate conclusion that a yacht loses its status under Subsection (h) upon charter. A fishing vessel does not stop being a fishing vessel when it is charted out for use as a fishing vessel. Similarly, a yacht should remain a yacht even if its owner rents it out for others to enjoy.

But the Court need not go this far. Defendant has produced evidence—the Craig affidavit—tending to show that the Amarula Sun's master put the vessel to purely recreational use starting in September 13, 2014. [DE 24 at 3.] If the factfinder credits this evidence, the vessel would be a yacht during the March 1, 2014, through 14, 2014, period for which Johnson claims penalty wages, even pursuant to Plaintiffs' preferred definition under <u>Reibelt</u>. The Court therefore cannot grant summary judgment in Plaintiffs' favor on these claims.

**IV.     Conclusion**

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

Plaintiffs' Motion for Summary Judgment [DE 22] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 19th day of May, 2015.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.